# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1432-18T1

G.P.D.,

    Plaintiff-Respondent,

v.

C.P.,

    Defendant-Appellant.

_____

<div style="margin-left:2em">

Submitted October 17, 2019 – Decided October 24, 2019

Before Judges Haas and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-1110-19.

The Tormey Law Firm, attorneys for appellant (Brent Di Marco, on the brief).

Respondent has not filed a brief.

</div>

PER CURIAM

    Appellant C.P. appeals from a November 27, 2018 final restraining order

(FRO) entered in favor of respondent G.P.D. pursuant to the Prevention of

Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm, substantially for the reasons set forth in Judge Carolyn A. Murray's November 26, 2018 oral decision and her supplemental decision of April 8, 2019.

The parties previously dated for approximately three years. Their relationship ended in 2017, but they maintained contact with one another as they share a child together. Their son now is three years old.

In her complaint seeking a temporary restraining order (TRO), G.P.D. asserted that C.P. harassed her on September 23, 2018 at the South Orange Police Department during a custodial exchange of their son. According to G.P.D., C.P. was angry that day because their child had a diaper rash and the tip of the child's penis was red. G.P.D. claimed that during the exchange at the police station, C.P. asked her if she was touching their son inappropriately.

When C.P. asked this question, G.P.D. became distressed and used the in-house phone to call for police officers. According to G.P.D.'s testimony, C.P. started screaming, became hostile, and told her to "shut the hell up" several times, even in front of police officers who responded to her call for assistance. After police diffused the situation and G.P.D. retrieved the parties' son, G.P.D. waited with police until the defendant left, and then took the child home. She applied for and obtained a TRO the next day.

The case returned to court on October 1, 2018 but was adjourned to allow G.P.D. time to secure counsel. Thereafter, a final hearing was held over the course of two days and a FRO issued on November 27, 2018. During the final hearing, G.P.D. described the September 23, 2018 incident, as well as several prior acts of domestic violence that occurred during the parties' relationship. For example, she related that on one occasion, she came home from work and defendant accused her of being intimate with several of her coworkers. After defendant accused G.P.D. of "f---ing" other men, she attempted to calm him down by putting her hand on his chest. He then thrust her hand away and, according to G.P.D., unintentionally bruised her. G.P.D. testified that defendant continued the argument and called her derogatory names, including "f---ing whore." She testified she became so fearful, her heart began beating "out of her chest." As G.P.D. attempted to reason with C.P., he spit on her face "really, really hard," which caused her to be humiliated and frightened. When she attempted to leave the situation and go to the bathroom, G.P.D. testified that C.P. forced her to keep the bathroom door open.

G.P.D. also testified defendant always knew her whereabouts, because he insisted on calling her during her commute to and from work and would call her place of work often. Moreover, G.P.D. affirmed C.P. often hid her keys from

3

her and locked the door to prevent her from leaving home. Further, G.P.D. testified C.P. cleaned his gun in her presence after they had argued, which she took as a threatening message. According to G.P.D.'s testimony, there also were several occasions when she had been in bed asleep and she was awoken to find C.P. attempting to unlock her phone by pressing her finger on her cell phone.

In her extensive November 26, 2018 oral decision, as well as in her thorough supplemental written decision of April 8, 2019, Judge Murray credited G.P.D.'s testimony about the September 23, 2018 incident and G.P.D.'s testimony about a history of domestic violence. Judge Murray noted G.P.D.'s rendition of prior incidents was very specific and thoughtful. Furthermore, the judge observed that while C.P. acknowledged a similar version of the September 23, 2018 incident, G.P.D.'s version of the incident was corroborated by video evidence from the South Orange Police Department.

On appeal, C.P. maintains he did not commit the predicate act of harassment that the parties' dispute did not rise to the level of domestic violence, and no FRO was needed to protect the plaintiff. We disagree.

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's fact-finding is "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12

(quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413.

"Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of creditability.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is so because the judge has the opportunity to see and hear the witnesses as they testify, thereby developing a "'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). A judge's purely legal decisions, however, are subject to our plenary review. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). First, the judge must determine if the plaintiff has proven, by a preponderance of evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a), which incorporates harassment, N.J.S.A. 2C:33-4, as

conduct constituting domestic violence. Id. at 125-26. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); N.J.S.A. 2C:25-29(a)(1). "A defendant's prior abusive acts should be considered 'regardless of whether those acts have been the subject of a domestic violence adjudication.'" Pazienza v. Camarata, 381 N.J. Super 173, 183 (App. Div. 2005) (quoting Cesare, 154 N.J. at 405). "[N]ot only may one sufficiently egregious action constitute domestic violence under the Act, even with no history of abuse between the parties, but a court may also determine that an ambiguous incident qualifies as prohibited conduct, based on a finding of violence in the parties' past." Cesare, 154 N.J. at 402.

Secondly, if a predicate offense is proven, a court must assess "whether a restraining order is necessary, upon an evaluation of the facts set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011). Whether a restraining order should issue depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment [,] and physical

abuse," and on "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)); See also Cesare, 154 N.J. at 402. Applying these standards to C.P.'s arguments on appeal, we are satisfied there was substantial credible evidence to support Judge Murray's finding that G.P.D. satisfied both prongs of Silver.

N.J.S.A. 2C:33-4 defines harassment, in relevant part, as follows: "[A] person commits a petty disorderly persons offense if, with purpose to harass another, he: (a) Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm[.]" Proof of a purpose to harass is an essential element of N.J.S.A. 2C:33-4. See L.D. v. W.D., 327 N.J. Super. 1, 5 (App. Div. 1999). "A finding of a purpose to harass may be inferred from the evidence presented[,]" and "[c]ommon sense and experience may inform that determination." State v. Hoffman, 149 N.J. 564, 577 (1997). Because direct proof of intent is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances," and "[p]rior conduct and statements may be

relevant to and support an inference of purpose." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006).

Here, the judge concluded that C.P. had committed the predicate act of harassment, noting he had engaged in prior controlling and abusive acts against G.P.D. Considering this history of domestic violence, Judge Murray determined C.P. asked G.P.D. if she inappropriately touched their son for the purpose of harassing G.P.D. As Judge Murray pointed out, defendant's failure to follow up with law enforcement about his alleged concern that someone may have molested his son was "consistent with making a statement intended to alarm or very significantly annoy the plaintiff."

There is also credible evidence in the record to support Judge Murray's conclusion, under the second prong of the Silver test, that a FRO was needed to protect G.P.D. Judge Murray found that G.P.D. credibly testified about her fear of C.P. and his history of controlling and abusive acts. The judge noted that even exchanging the parties' son at a police station provided insufficient motivation for the defendant to control his temper. We discern no basis for disturbing Judge Murray's credibility and factual findings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1432-18T1